UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| AUDREY SALENTIN HODGINS TRUST DATED DECEMBER 16, 1995 and THE FRANCIS EDWARD HODGINS IRREVOCABLE TRUST DATED DECEMBER 16, 1995, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 2:11-cv-2159 ) |
| COMPREHENSIVE CAPITAL MANAGEMENT, INC., | ) ) ) |
| Defendant. | ) ) ) |

## COMPLAINT

NOW COME Plaintiffs, the Audrey Salentin Hodgins Trust Dated December 16, 1995 and the Francis Edward Hodgins Irrevocable Trust Dated December 16, 1995, by and through their attorneys, Walker Wilcox Matousek LLP, and for their complaint against Defendant, Comprehensive Capital Management, Inc. respectfully states as follows:

### Parties

1. Plaintiff, the Audrey Salentin Hodgins Trust Dated December 16, 1995 (the "ASH Trust"), is a trust organized and validly existing under the laws of the state of Illinois. Ms. Audrey S. Hodgins, the Trustee of the ASH Trust, is a resident and a citizen of Urbana, Illinois.

2. Plaintiff, the Francis Edward Hodgins Irrevocable Trust Dated December 16, 1995 (the "FEH Trust") (collectively the ASH Trust and the FEH Trust are "Plaintiffs"), is a trust organized and validly existing under the laws of the state of Illinois. Ms. Audrey S. Hodgins, the Trustee of the FEH Trust, is a resident and a citizen of Urbana, Illinois.

3.	Defendant Comprehensive Capital Management, Inc. ("CCM") is a New Jersey Corporation with its principal place of business at 2001 Route 46, Suite 500 Parsippany, New Jersey.

## Jurisdiction and Venue

4.	This Court has subject matter over this dispute pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest or cost, and the controversy is between a citizen of New Jersey and citizens of Illinois.

5.	This Court has general jurisdiction over the Defendant because Defendant has systematically and continuously done business in Illinois and, accordingly, has sufficient minimum contacts with Illinois so as to satisfy the requirements of due process.

**6.**	Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(a)(3) because the Defendant is subject to personal jurisdiction in this judicial district.

## Background Facts

7.	Defendant, CCM, is an investment advisor registered with the United States Securities and Exchange Commission under the Investment Advisors Act of 1940.

8.	On August 10, 2006 the Plaintiffs' trustee and Defendant entered into Asset Allocation Services Representative Management Account Agreement (the "Agreement") (Ex. 1). The Agreement provided that, among other things, Plaintiffs "agrees to retain CCM to provide client with the investment advisory services for the compensation specified in this Agreement. Both [Ms. Hodgins] and CCM intend to be legally bound by this Agreement" (Ex. 1 at ¶2).

9. The Agreement further provided that:

SERVICES: CCM shall develop, implement, monitor, maintain and./or adjust an asset allocation, for the account(s) of the client, based upon a review of the client's objectives, expectations, timeframe for investing, and risk tolerance.

CCM shall also develop, implement, monitor and/or adjust selections of individual securities on behalf of [Ms. Hodgins]….

CCM shall have the discretion to select and replace securities and to select and adjust asset allocations as it deems appropriate to achieve optimal performance.

(*Id.*).

10. The Agreement also provided that "[a]ll newly received client monies will be placed in a money market account until such time as CCM can implement computer and other procedural inputs."

11. The term of the agreement was for an initial period of one year, however, the Agreement provided that it would continue in effect unless terminated by either party upon Thirty (30) days written notice (*Id.* at ¶4). Neither party has terminated the Agreement.

12. The accounts to be managed by CCM under the Agreement were: (1) TD Ameritrade account No. 50898748, Audrey S. Hodgins Roth IRA; (2) TD Ameritrade Account No. 50737712, Audrey S. Hodgins Rev. Trust; and (3) TD Ameritrade Account No.50737717, Francis E. Hodgins Trust (the "Accounts"). Ms. Hodgins is the trustee of the latter two accounts.

13. CCM appointed Timothy J. Roth ("Roth"), who at all time relevant hereto was an employee of CCM, to act as its representative under the Agreement.

14. Between October 6, 2006 and November 20, 2010, Defendant caused funds to be transferred from the Accounts into accounts of various entities under Mr. Roth's control. These transfers were not authorized or directed by the trustee Ms. Hodgins.

15. On October 6, 2006 Defendant caused $75,000 to be wire transferred from TD Ameritrade Account No.50737717 for the FEH Trust to an account under Roth's control at Strategic Capital Bank. This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the FEH Trust.

16. On July 20, 2007 Defendant caused $100,000 to be wire transferred from TD Ameritrade Account No.50737717, for the FEH Trust, to an unknown account which, upon information and belief, was under Roth's control. This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the FEH Trust.

17. On September 19, 2007 Defendant caused $100,000 to be transferred from TD Ameritrade Account 50737712 for the ASH Trust to TD Ameritrade account No. 9081947501 for Keyop Exercise, Inc. a company under Roth's control. This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the Audrey S. Hodgins Rev. Trust.

18. On December 18, 2007 Defendant caused $50,000 to be transferred from both the TD Ameritrade Account 50737712 for the ASH Trust and TD Ameritrade Account No.50737717, for the FEH Trust to TD Ameritrade account No. 9081947501 for Keyop Exercise, Inc. a company under Roth's control. Neither of these transfers was authorized by Ms. Hodgins in her capacity as Trustee of the FEH Trust or the ASH Trust.

19. On December 19, 2007 Defendant caused $100,000 to be wire transferred from the TD Ameritrade Account 50737712 for the ASH Trust to an account in the name of Keyop Exercise, Inc., a company under Roth's control, at Merrill Lynch. This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the ASH Trust.

20. On April 8, 2008 Defendant caused $125,000 to be transferred from the TD Ameritrade Account 50737712 for the ASH Trust to TD Ameritrade account No. 9081947501

for Keyop Exercise, Inc. a company under Roth's control.  This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the ASH Trust.

21. On May 13, 2008 Defendant caused $50,000 to be transferred from the TD Ameritrade Account 50737712 for the ASH Trust to TD Ameritrade account No. 9081947501 for Keyop Exercise, Inc. a company under Roth's control.  This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the ASH Trust.

22. On June 24, 2008, Defendant caused $65,000 to be transferred from the TD Ameritrade Account 50737712 for the ASH Trust to TD Ameritrade account No. 9081947501 for Keyop Exercise, Inc. a company under Roth's control.  This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the ASH Trust.

23. On July 8, 2008, Defendant caused $100,000 to be transferred from the TD Ameritrade Account 50737712 for the ASH Trust to TD Ameritrade account No. 9081947501 for Keyop Exercise, Inc. a company under Roth's control.  This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the ASH Trust.

24. On July 21, 2008, Defendant caused $45,000 to be transferred from the TD Ameritrade Account 50737712 for the ASH Trust to TD Ameritrade account No. 9081947501 for Keyop Exercise, Inc. a company under Roth's control.  This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the ASH Trust.

25. On July 25, 2008 Defendant caused $65,000 to be transferred from the TD Ameritrade Account 50737712 for the ASH Trust to TD Ameritrade account No. 9081947501 for Keyop Exercise, Inc. a company under Roth's control.  This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the ASH Trust.

26.     On July 28, 2008, Defendant caused $23,000 to be transferred from the TD Ameritrade Account 50737712 for the ASH Trust to TD Ameritrade account No. 9081947501 for Keyop Exercise, Inc. a company under Roth's control.  This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the ASH Trust.

27.     On September 2, 2008, Defendant caused $40,000 to be transferred from the TD Ameritrade Account 50737712 for the ASH Trust to TD Ameritrade account No. 9081947501 for Keyop Exercise, Inc. a company under Roth's control.  This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the ASH Trust.

28.     On November 20, 2010, Defendant caused $65,000 to be wire transferred from TD Ameritrade Account No. 50737717, for the FEH Trust to an account maintained in the name of VCN Select.Org., LLC., a company under Roth's control, at the Midland State Bank.  This transfer was not authorized by Ms. Hodgins in her capacity as Trustee for the FEH Trust.

29.     Between October 6, 2006 and November 20, 2010 Defendant caused a total of 14 unauthorized transfers from either TD Ameritrade Account No. 50737717, for the FEH Trust or TD Ameritrade Account 50737712 for the ASH Trust 9081947501 to accounts under Roth's control.  The total amount improperly transferred was just under $1,000,000.00

30.     Plaintiffs have secured from TD Ameritrade documents that purport to have been signed by Audrey S. Hodgins authorizing the improper transfers made on September 19, 2007, December 18 and 19 of 2007, April 8, 2008, May 24 2008 and November 20, 2010.  The signature appearing on these documents is not that of Ms. Audrey S. Hodgins and Ms. Hodgins never authorized these transfers.  Upon information and belief Plaintiffs believe that Defendant improperly caused these documents to be prepared and Ms. Hodgins name to be affixed without any valid authorization to do so.

31. Upon information and belief, Plaintiffs believe that there are additional invalid documents not signed or otherwise authorized by Ms. Hodgins purporting to authorize the remaining improper transfers set out hereinabove. Plaintiffs will be able to demonstrate that these documents were caused to be prepared by the Defendant and that Ms. Hodgins name was affixed to these documents without any valid authority to do so.

32. On or about February 28, 2011, Defendant CCM terminated Roth's employment for reasons that are not specifically known to Plaintiff.

33. On March 21, 2011 the United States Securities and Exchange Commission ("SEC") filed a Complaint, (Ex. 2), in the Federal District Court for the Central District of Illinois naming Roth as a Defendant and Keyop Exercise, Inc. and VCN Celect.Org, LLC, among others, as Relief Defendants (the "SEC Lawsuit"). The SEC Lawsuit alleges generally that Roth has stolen more than $6 million worth of Mutual Fund shares from several non-qualified deferred compensation plans for whom he provided investment advice. Specifically, the SEC alleges that Roth surreptitiously caused the plan's mutual fund shares to be transferred to an account under his control. After selling or redeeming the plans' shares, he siphoned the ill-gotten gains to various account and companies under his control or for his own benefit.

34. The Court in the SEC Lawsuit has appointed Timothy L. Bertschy to act as receive for the estate of the defendant and the Relief Defendants in that case. The Receiver is charged with, among other things, collecting and liquidating the assets of the Defendant and Relief Defendants therein and distributing them among Roth's victims.

35. Plaintiffs bring this action against Defendant, CCM, because CCM is both directly and vicariously liable to Plaintiffs for the improper transfers from the TD Ameritrade Accounts for the FEH Trust and the ASH Trust.

**Causes of Action**

**Count I**
**Negligence**

36. Plaintiffs reasserts and realleges paragraph 1-35 of this complaint as if fully set forth herein.

37. Defendant owed the Plaintiffs a duty of care of a registered investment advisor to properly supervise, monitor and control its employees. Defendant duty of care included a duty to establish adequate procedures, protocols and safeguards in place to ensure that its employees could not make unauthorized transfers of client funds to companies under the employees control.

38. Defendant breached its duty of care in that defendant failed to adequately supervise, monitor and control its employees to prevent them from making unauthorized transfers of Plaintiffs' funds. Defendant failed to implement adequate procedures, protocols and safeguards so as to insure that its employees could not make 14 unauthorized transfers over the course of 5 years of almost $1,000,000 into accounts controlled by the employees.

39. As a direct and proximate cause of Defendant breach of its duty of care, Plaintiffs have suffered actual damages.

40. Wherefore, Plaintiffs request that this Court enter judgment in their favor and against the Defendant.

## Count II
### Breach of Fiduciary Duty

41. Plaintiffs reassert and reallege paragraphs 1-35 of this complaint as if fully set forth herein.

42. As a result of the Defendant's superior knowledge and expertise in investing in general and their expertise in evaluating and monitoring Plaintiffs' assets and investments, as well as its relationship as an investment advisor to Plaintiffs a fiduciary relationship arose between the Defendant on the one hand and Plaintiffs on the other hand. The Defendant was aware of the high degree of trust being reposed in Plaintiffs and fully accepted that trust, and accepted their role as fiduciary for Plaintiffs.

43. As a result of this fiduciary relationship, the Defendant owed Plaintiffs a standard of care required of a Registered Investment Advisor in evaluating monitoring and safeguarding client funds placed in its control.

44. Defendant breached its fiduciary duty to Plaintiff by failing to implement adequate procedures, protocols and safeguards so as to insure that its employees could not make 14 unauthorized transfers over the course of 5 years of almost $1,000,000 into accounts controlled by the employees.

45. As a direct and proximate result of the Defendant's breach of its fiduciary duty Plaintiffs have suffered actual damages.

46. Wherefore, Plaintiffs request that this Court enter judgment in their favor and against the Defendant.

### Count III
### Breach of Contract

47. Plaintiffs reassert and reallege paragraphs 1-35 of this complaint as if fully set forth herein.

48. Plaintiffs and the Defendant entered into a valid and binding contract on August 10, 2006 (Ex. 1). The parties' contract expressly provides "[b]oth [Plaintiffs] and CCM intend to be legally bound by this agreement. The contract further provides:

> CCM shall develop, implement, *monitor, maintain* and./or adjust an asset allocation, for the account(s) of the client, based upon a review of the client's objectives, expectations, timeframe for investing, and risk tolerance….
>
> CCM shall have the discretion to select and replace securities and to select and adjust asset allocations as it deems appropriate to achieve optimal performance.

(Ex. 1 at ¶2) (emphasis supplied).

49. Plaintiffs have performed all of the terms and conditions required of them under the parties' agreement.

50. Defendant has breached the agreement by failing monitor and maintain the funds entrusted to its by Plaintiffs and by causing 14 unauthorized transfer over the course of 5 years of almost $1,000,000 to accounts controlled by Roth. The Defendant also breached the agreement is failing to exercise discretion "to achieve optimal performance."

51. As a direct and proximate result of the Defendant's breach of contract Plaintiffs have suffered damages.

52. Wherefore Plaintiffs request that the Court enter judgment in favor of the Plaintiffs and against the Defendant.

### Count IV
### Violation of the Illinois Consumer Fraud Act

53. Plaintiffs reassert and reallege paragraphs 1-35 of this complaint as if fully set forth herein.

54. 815 ILCS 505/2 makes it unlawful for a "person" to engage in an unfair or deceptive practice:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact….

815 ILCS 505/2.  815 ILCS 505/10a creates a private cause of action for a "person" against any other "person" engaging in any unfair or deceptive practices.

55. Defendant and Plaintiffs are all "persons" as defined in 815 ILCS 505/1(c).

56. As set forth in detail above, Defendant engaged in unfair or deceptive business practices on at least fourteen occasions.  Defendant conduct in causing transfer authorizations to be prepared and Ms. Hodgins name to be affixed thereto, without Ms. Hodgins knowledge or authorization, and using those authorizations to transfer money to accounts controlled by Roth, constitutes an unfair and deceptive practice.

57. Through its concealment of the foregoing conduct, Defendant intended Plaintiffs to rely on the fact that money entrusted to the Defendant was not being transferred into accounts controlled by Roth.

58. Defendant's unfair or deceptive conduct occurred in the course of commerce.

59. As a direct and proximate result of Defendant's unfair or deceptive acts, Plaintiffs have suffered actual damages.

60. Wherefore Plaintiffs request this Court enter judgment in their favor and against Defendant.

### Request for Relief

61. Plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendant and award Plaintiffs: (1) actual damages in the amount of $988,000; (2) pre and post judgment interest at the maximum rate permitted by law; (3) reasonable attorneys' fees and costs incurred by the Plaintiffs in prosecuting this case; (4) punitive and exemplary damages in an amount to be determined by the Court; and (5) such other and further relief as the Court deems just and proper.

### Jury Demand

62. Plaintiffs demand trial by a jury.

>AUDREY SALENTIN HODGINS TRUST DATED DECEMBER 16, 1995 AND THE FRANCIS EDWARD HODGINS IRREVOCABLE TRUST DATED DECEMBER 16, 1995
>
>By:    /s/ Christopher A. Wadley
>              One of Their Attorneys

Neil E. Holmen (Lead Counsel)
Christopher A. Wadley
Douglas E. Feldman
WALKER WILCOX MATOUSEK LLP
225 West Washington Street
Suite 2400
Chicago, IL  60606
Telephone:  (312) 244-6700
Facsimile:  (312) 244-6800